IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 15-cv-01828-MSK-SKC

**COPPER OAKS MASTER HOME OWNERS ASSOCIATION,**

    Plaintiff,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**

    Defendant.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO CLARIFY**
_____

    **THIS MATTER** comes before the Court pursuant to the Defendant's ("Am Fam") Motion to Clarify **(# 187)** the Court's September 3, 2019 Opinion and Order ("Order") Denying Motions for Summary Judgment **(# 186)**, and the Plaintiff's ("Copper Oaks") response **(# 190)**. The Court assumes the reader's familiarity with the Order and the proceedings to date.

    Am Fam seeks clarification of the Order's finding that Copper Oaks' appraiser, George Keys, was not acting as Copper Oaks' agent during the appraisal proceedings in this case. Am Fam states that the Order is unclear as to whether the Court was making that finding as a matter of fact or as a matter of law, and requests that the Court clarify the Order to indicate that the question of whether Mr. Keys was operating as Copper Oaks' agent remains a matter of fact to be determined by the jury.

    The Court grants Am Fam's request to clarify the Order but disagrees with Am Fam's substantive argument to some degree. The reasoning in the cases relied upon by this Court in its Order, including *Norwich Union Fire Ins. Society v. Cohn*, 68 F.2d 42 (10th Cir. 1933) and

1

*Owners Ins. Co. v. Dakota Station II Condominium Assn.*, 443 P.3d 47, 53 (Colo. 2019), make clear that an appraiser cannot, as a matter of law, act as the agent of the party appointing them when participating in an appraisal proceeding. In *Norwich*, the 10th Circuit explained that "while the appraisers are appointed by the parties, they are not subject to the control of the parties. They are not agents in law." 68 F.2d at 44. Similarly, *Dakota Station* emphasizes that an appraiser is not acting "on behalf of [the] party" that appointed it and states that an appraiser must be "unbiased [and] disinterested" in the outcome of the proceeding. 443 P.3d at 53 (emphasis in original). This status is fundamentally inconsistent with the notion of agency, which requires that the agent agree to act "on behalf of and subject to the control of" the principal. *See* Colo. Jury Instr. 2d Civil 8:1.

Am Fam attempts to distinguish *Norwich* and *Dakota Station* by suggesting that the rule in those cases – that appraisers do not serve as the agents of the party appointing them – applies only when the appraiser is acting with the degree of impartiality required by contract and law. Am Fam argues that when the appraiser falls short of that duty, as the Court found Mr. Keys had done here, it is possible to characterize the appraiser as acting in an agency capacity instead.

Am Fam's argument is not tethered to anything in the language of these decisions – nothing in *Norwich* or *Dakota Station* suggest that an appraiser who demonstrates partiality can retroactively be characterized as the agent of the party appointing him or her. If anything, *Norwich* suggests exactly the opposite: that "fault of an appraiser" in failing to carry out his or her responsibilities under the terms of their appointment "is not the fault of the party appointing him." 68 F.2d at 44. If Am Fam's argument that an appraiser who fails to demonstrate impartiality can be declared the agent of the party appointing him, "fault of an appraiser" would

2

be attributed to the appointing party by operation of the principles of agency. *See* Colo. Jury Instr. 2d Civil 8:19 (principal is liable for acts of agent).

Am Fam also relies upon century-old authority from Alabama and Illinois. *Headley v. Aetna Ins. Co.*, 80 So. 466 (Ala. 1918), which quotes *Niagara Fire Ins. Company v. Bishop*, 39 N.E. 1102 (Ill. 1894). In *Niagara*, the parties appointed appraisers, but the insurer's appraiser insisted on appointing an umpire in Chicago over the objection of the insured's appraiser who sought appointment of an appraiser located closer to the subject property. The dispute proved intractable and the appraisal process was not completed. The insured brought suit for the loss and the trial court ruled in the insured's favor. The insurer then appealed, arguing that the failure to complete the appraisal process precluded an award under the policy. The Supreme Court of Illinois explained that:

> while it is true that an arbitrator or appraiser is not to be regarded as the agent of the party appointing him, simply by reason of the fact of his appointment, [ ] an arbitrator or appraiser may act in such a partial manner, and so manifestly in the interest of the party appointing him, that it may become a question of fact to be submitted to the jury, or to be determined by the court sitting without a jury, whether he conducts himself as an agent to such an extent that the party appointing him shall be held responsible for his acts. If an insurance company selects a man for appraiser who, instead of acting as such, conducts himself in the interest of the company, and as an agent for the company, the company will be held responsible for such conduct on his part as inures to the benefit of the company. If the evidence proves that he prevents an agreement, or the appointment of an umpire, by methods which show him to be the agent of the company, his acts will be regarded as those of his principal.

39 N.E. at 1106. The court ultimately held that the evidence supported the trial court's findings that the insurer's appraiser both prevented the appraisal (by insisting on an umpire that was "unknown to" the insured's appraiser) and demonstrated "a relation of agency" with the insurer (by essentially offering to adjust the claim on the insurer's behalf, albeit "at a low figure," rather

3

than proceeding with the appraisal), the trial court properly found the insurer to have breached the policy terms by preventing the completion of the appraisal process, thereby allowing the insured to commence suit in court.

*Headley* involved essentially identical facts. There, the trial court directed a verdict in favor of the insurer because the parties had not completed the appraisal process, but the Alabama Supreme Court reversed. Relying upon *Niagara*, the court found that the insured (and the insured's appraiser) was without fault in the failure to complete the appraisal process. Instead, the insurer's appraiser was at fault for insisting upon a remotely-located umpire unknown to the insured's appraiser. The court found that the insurer's appraiser acted as the insurer's agent as a matter of fact because the appraiser "conferred with the agents of the insurance company who wrote the policy, and with the manager of the adjusting company, as to the appointment of an umpire." Thus, the court found that the insurer had breached the contract by preventing completion of the appraisal process.

As interesting as *Niagara* and *Headley* are from a historical perspective, they are not particularly helpful in this matter. First, they do not purport to apply Colorado common law, nor does it appear that any Colorado court has relied upon them. Second, they begin with the same legal doctrine underpinning *Owners Ins. Co. v. Dakota Station II Condominium Assn.* – an appraiser does not become the agent of the party retaining him or her simply due to their retention, and hold that where the appraiser collaborated with the insurer to frustrate the completion of the appraisal process (*Headley*) or where the agent conducts himself as an the agent for the company *(Niagara)* the appraiser's conduct can be imputed to the party who retained him or her. Finally, these cases only concern circumstances where the appraiser who is

4

deemed to be an agent prevented the performance of the appraisal process required by the insurance contract.

It is clear that the facts and issue presented in *Headley* and in *Niagara* differ substantially from those the instant matter. In *Headley* and *Niagara*, an appraiser for the insurer prevented completion of the appraisal process by insisting upon selection of an umpire located far from subject property. The issue was whether the obstinance of the appraiser was imputable to the party who retained him, such that it constituted breach a of the insurance contract. In both cases, the courts concluded that the conduct of the retaining party justified imputation of the appraiser's conduct to it. In *Headley,* the court specifically found that the insurer conferred with its appraiser in selecting the umpire. In *Niagara,* the court found what might be called "apparent agency" based on the appraiser coupling the designation of the remotely located umpire with an offer to settle the matter for a lower amount. In each case, due to the fault of the insurer, the wrongful actions of the appraiser were imputed to it, creating a breach of contract.[1]

In the instant case, the appraisal process was completed. The Court found that the loss determination was invalid because the Mr. Keys had not been impartial according to the standard adopted by the parties. Copper Oaks' conduct was not before the Court. As the Court stated in the Order "if Am Fam is ultimately able to convince the factfinder that the failure of the appraisal award here was the fault of Copper Oaks" (not just Mr. Keys), "dismissal of Copper Oaks' claims in part or whole due to failure of the Full Compliance Clause might be

---

[1] This circles back to the issue raised by the court at the advent of this case – was there a case or controversy when the appraisal process required by the insurance policy as a condition precedent to suit had not been completed? In both *Niagara* and *Headley*, the courts were apparently concerned about the same issue. By imputing the actions of the appraiser to the insurer, the courts were able to recognize a breach of contract claim and thus found that the insured had standing to initiate suit.

appropriate." *Docket* # 186 at n. 10.  For that purpose and others, the Court has set the matter for trial.

Accordingly, Am Fam's Motion for Clarification (**# 187**) is **GRANTED IN PART** and **DENIED IN PART**.  The Court grants the motion to the extent that it clarifies the discussion in its Order, but denies the motion to the extent that Am Fam suggests that agency principles are determinative of Copper Oaks' performance or breach of the insurance contract.

Dated this 18th day of October, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge